**In re BRENDLE'S INCORPORATED, Debtor.**

**BRENDLE'S INCORPORATED, Plaintiff,**

v.

**DAZEY CORPORATION, Defendant.**

**Bankruptcy No. 96–50495C–11W. Adversary No. 97–6008.**

United States Bankruptcy Court, M.D. North Carolina, Winston–Salem Division.

July 22, 1997.

R. Bradford Leggett, Winston–Salem, NC, for Debtor.

Carl Edwin Allman, III, Winston–Salem, NC, for Plaintiff.

## MEMORANDUM OPINION

WILLIAM L. STOCKS, Chief Judge.

This adversary proceeding came before the court on June 5, 1997, for hearing upon a Motion to Set Aside Default Judgment filed on behalf of Dazey Corporation, the defendant in this adversary proceeding. R. Bradford Leggett appeared on behalf of Brendle's Incorporated ("Debtor"), the plaintiff in this adversary proceeding. Bruce H. Connors appeared on behalf of Dazey Corporation ("Dazey").

## JURISDICTION

The court has jurisdiction over the subject matter of this proceeding pursuant to 28 U.S.C. §§ 151, 157, and 1334, and the General Order of Reference entered by the United States District Court for the Middle District of North Carolina on August 15, 1984. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(B) and (C) which this court may hear and determine.

## FACTS

On April 16, 1996, the Debtor filed a voluntary petition under Chapter 11. On July 5, 1996, Dazey filed a general unsecured claim in the amount of $148,399.05. This adversary proceeding was filed by the Debtor on

February 5, 1997. In this proceeding the Debtor prays that Dazey's entire claim be disallowed and that the Debtor have and recover from Dazey a prepetition balance of $34,123.91 and a postpetition balance of $32,-561.45. The amounts sought by the Debtor are based upon advertising credits, volume rebate charge backs and other credits which are described in detail in the pleading filed by the Debtor. Process in this adversary proceeding was mailed to Dazey on February 14, 1997, to the attention of Donald R. Drescher, Dazey's Secretary/Treasurer. Pursuant to the summons which was issued in this case, answer or other response from Dazey was due on March 8, 1997. On April 22, 1997, the Debtor filed a motion for entry of default and entry of default judgment based upon Dazey having filed no answer or other response. On April 23, 1997, entry of default was signed by the Clerk and on that same date a default judgment in the amount of $66,685.36 was entered against Dazey. On May 19, 1997, Dazey filed a motion to set aside the default judgment which was accompanied by an affidavit from Mr. Drescher. In the motion to set aside default judgment and the memoranda submitted in support of the motion, Dazey contends that the default judgment should be set aside pursuant to Rule 60(b) of the Federal Rules of Civil Procedure because the judgment was entered as a result of excusable neglect on the part of Dazey. The Debtor opposes the motion on the grounds that under the facts of the present case, Dazey is not entitled to relief pursuant. to Rule 60(b) based upon excusable neglect. The remaining facts are set forth in the following portion of this memorandum opinion.

## ANALYSIS

Rule 7055 of the Federal Rules of Bankruptcy Procedure incorporates Rule 55 of the Federal Rules of Civil Procedure dealing with default judgments. Under subparagraph (c) of Rule 55, the court may set aside an entry of default for "good cause shown"; if a judgment by default has been entered the court may set aside the default has been entered the court may set aside the default judgment "in accordance with Rule 60(b)." In the present case, both an entry of default

and a default judgment have been entered. This means that Rule 60(b) is controlling with respect to the motion.

■ In order to obtain relief from a judgment under Rule 60(b), a movant must show that the motion is timely, that the movant has a meritorious defense to the action, that the opposing party would not be unfairly prejudiced by having the judgment set aside and must establish one or more of the grounds for relief set forth in Rule 60(b) such as mistake, inadvertence, surprise or excusable neglect. *See Werner v. Carbo*, 731 F.2d 204, 206–07 (4th Cir.1984); *Compton v. Alton Steamship Co., Inc.*, 608 F.2d 96, 102 (4th Cir.1979).

Dazey relies upon the provision in Rule 60(b) which provides that on motion and upon such terms as are just, the court may relieve a party from a final judgment for "excusable neglect." In order to prevail in the present case, Dazey therefore has the burden of showing (1) that its motion was timely; (2) that it has a meritorious defense to the claim asserted by the Debtor; (3) that the Debtor would not be unfairly prejudiced by having the judgment set aside; and (4) that Dazey's neglect is excusable.

■ Dazey has satisfied the requirement that the Rule 60(b) motion be timely. The default judgment was entered on April 23, 1997. The motion to set aside the judgment was filed on May 19, 1997, less than thirty days after the entry of the judgment. Under the circumstances of this case, this constitutes a timely filing of the motion.

■ Dazey also has made a sufficient showing of a meritorious defense. At this juncture, Dazey is not required to show that it will prevail on the merits if the judgment is set aside. All that is required is that Dazey make a proffer of evidence which would permit a finding in its favor. *See Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp.*, 843 F.2d 808, 811 (4th Cir.1988); *Central Operating Co. v. Utility Workers of America, AFL–CIO*, 491 F.2d 245, 252 n. 8 (4th Cir.1974); *Williams v. Blitz*, 226 F.2d 463 (4th Cir.1955). Both parties filed affidavits regarding the merits of the claim assert-

ed by the Debtor. It is not the function of the court to resolve the conflicts raised by these affidavits and make a determination as to whether Dazey, in fact, does have a valid defense. Instead, the court need only determine whether the contents of Dazey's affidavits, taken as true, would permit a finding in favor of Dazey with respect to some or all of the amounts sought by the Debtor in this action. The affidavits are sufficient to do so, which is all that is required at this time.

Whether Dazey has shown that the Debtor would not be unfairly prejudiced by having the judgment set aside is a more difficult question. The Debtor asserts that Dazey is in the process of liquidating and closing its business and that if the judgment is set aside the Debtor will be unfairly prejudiced because its chances of ever collecting from Dazey may be lost during the time that will be required for the Debtor to obtain another judgment against Dazey. Dazey's own evidence disclosed that Dazey is liquidating its manufacturing business and that it has reduced its staff of employees to the point at which it has insufficient staffing to properly process incoming mail. No evidence was offered as to the circumstances surrounding the ongoing liquidation of Dazey's business nor as to the effect which the liquidation will have upon the creditors of Dazey, leaving some doubt as to whether the Debtor would be unfairly prejudiced if the judgment is set aside.

However, the most significant difficulty faced by Dazey in obtaining relief from the default judgment has to do with the requirement that it show that its neglect is excusable for purposes of Rule 60(b). The standard or test for determining whether neglect is excusable for purposes of Rule 60(b) was stated recently in *Heyman v. M.L. Marketing Co.*, 116 F.3d 91 (4th Cir.1997), where the court stated:

> In *Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp.*, 843 F.2d 808 (4th Cir.1988), we recognized that default judgments pit the court's strong preference for deciding cases on the merits against countervailing interests in finality and in preserving the court's ability to control its docket. We established two analytical approaches under Rule 60(b) in cases of default: (1) those that involve a blameless party and a blameworthy attorney, and (2) those that involve a blameworthy party.

> We stated that "when [a] party is blameless and the attorney is at fault, the [court's interest in reaching the merits] control[s] and a default judgment should ordinarily be set aside." ... However, when dismissal is caused by the negligence of a party, vacatur is not granted as freely. See *Augusta,* 843 F.2d at 810–12. As we noted in *Augusta,* the stricter analysis of *Park Corp. v. Lexington Insurance Co.*, 812 F.2d 894 (4th Cir.1987) then applies: "When the party is at fault, the [court's interest in finality and efficiency] dominate[s] and the party must adequately defend its conduct in order to show excusable neglect." *Augusta,* 843 F.2d at 811 (citing *Park,* 812 F.2d at 897).

*Heyman,* 116 F.3d at 94. After noting that the *Heyman* case involved neglect on the part of a party and not the attorney, the court held that the movant, Mr. Heyman, did not qualify for the liberal approach to Rule 60(b) relief and therefore would be required to "show an acceptable reason for his neglect." The court then proceeded to consider and reject each of the excuses offered by the movant for his neglect. In the present case it is undisputed that the neglect in question was neglect on the part of Dazey and was not attorney neglect. Therefore, under the applicable standard as set forth in the *Heyman* case, the issue to be decided by the court is whether Dazey has shown an acceptable reason for its failure to file a timely response in this case such that its neglect is excusable. The explanation or reason for Dazey's failure to file a timely answer is contained in the first affidavit of Donald R. Drescher, the Secretary/Treasurer of Dazey. According to the affidavit Dazey began selling and liquidating its manufacturing business in October of 1996 and in doing so went from having approximately 350 employees to having only 11 employees, including going from a 6 person accounting staff to 1 person. The affidavit further states that Dazey's credit manager normally prepared proofs of claims for

Dazey and handled "any subsequent documents" and that when the envelope containing the summons was received in February of 1997, the Credit Manager "had already ended his employment as had most other department heads." The affidavit then states that "[b]ecause of the lack of staff and the fact that [Drescher] was receiving a high volume of documents that would normally be handled by other departments, the Summons in this case was misplaced with other documents and never brought to the attention of Dazey's counsel until after the default judgment was entered." While this explanation clearly is sufficient to show neglect on the part of Dazey, it does not state an acceptable reason for Dazey's failure to file a timely answer in this case and thereby fails to show excusable neglect. In the present case the proof of claim filed on behalf of Dazey was signed by Mr. Drescher. The later envelope containing the summons was sent to the attention of Mr. Drescher. Hence, this is not a case in which the envelope was addressed to a person who no longer was employed at Dazey. The affidavit states that the envelope was "misplaced" and attributes such misplacement to lack of staff and the fact that Mr. Drescher was receiving a "high volume" of documents and was busy. The decision to reduce the number of employees was a voluntary one made by Dazey. There is no assertion that Dazey was financially unable to employ more than 11 employees. If this voluntary reduction in staff resulted in Mr. Drescher being overburdened, it is a matter which was entirely within the control of Dazey and offers no acceptable excuse for the failure to properly handle a summons which clearly and unequivocally stated that a judgment by default would be taken against Dazey if a timely response were not filed. In other words, the fact that Dazey may have voluntarily placed itself in a position in which its employees were too busy to handle important legal matters does not warrant any relief under Rule 60(b). The court dealt with a

similar excuse in the *Heyman* case when the movant argued that he was overworked because he was assigned numerous cases at the same time. In rejecting this excuse, the court observed that if the movant could not satisfactorily perform his obligations he should not have accepted the appointment. In the present case, having apparently placed its employee in a position in which he had more work than he could perform, Dazey may not utilize the work overload as a grounds for relief from a default judgment resulting from the situation created by Dazey. Moreover, although the affidavit suggests that Mr. Drescher was performing work which had been performed by other employees in the past, there was no showing that Mr. Drescher was incapable of reading the summons and realizing that it should be turned over to counsel.

Dazey argues that in determining whether its neglect is excusable, the court should be guided by the decision of the Supreme Court in *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. Partnership*, 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993). In the *Pioneer* case the Supreme Court interpreted the phrase "excusable neglect" as used in Bankruptcy Rule 9006(b)(1) which authorizes a bankruptcy court to extend filing deadlines upon a finding of excusable neglect. The Court defined "neglect" as encompassing late filings cause by inadvertence, mistake, or carelessness and described "excusable" as being an equitable inquiry, taking into account all relevant circumstances surrounding the party's omission, including the danger of prejudice to the non-movant, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith. Although some cases have applied the *Pioneer* test in deciding a Rule 60(b) motion,[1] this is not the test

---

1. Dazey's position finds support in cases decided outside the Fourth Circuit. *See Briones v. Riviera Hotel and Casino*, 116 F.3d 379 (9th Cir.1997) ("the equitable test set out in *Pioneer* applies to Rule 60(b) as well.... There appears to be no reason why the term 'excusable neglect' in Rule 60(b) should not generally be given the same

effect as it was given in Rule 9006(b)."); *Pratt v. Philbrook*, 109 F.3d 18, 19 (1st Cir.1997) ("by construing 'excusable neglect,' a phrase used throughout the federal, civil, criminal and appellate rules of procedure, *Pioneer* must be understood to provide guidance outside the bankruptcy context."); *Cheney v. Anchor Glass Container*

utilized by the Fourth Circuit Court of Appeals in the *Heyman* case, its most recent case involving a determination of excusable neglect under Rule 60(b). The case to be followed by this court is the one from the Court of Appeals for the Fourth Circuit.

## CONCLUSION

For the foregoing reasons an order will be entered denying the motion to set aside the default judgment which was entered against Dazey on April 23, 1997.

Corp., 71 F.3d 848, 849 (11th Cir.1996) ("The Supreme Court has now clarified the meaning of 'excusable neglect' in *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. Partnership* ... It stated that 'for purposes of Rule 60(b), "excusable neglect" is understood to encompass situations in which the failure to comply with a filing deadline is attributable to negligence.' "). The Court of Appeals for the Fourth Circuit has found that the *Pioneer* definition of "excusable neglect" is applicable to Federal Rule of Appellate Procedure 4(a)(5) and should be used in determining whether the late filing of a notice of appeal should be excused. *Thompson v. E.I. DuPont de Nemours & Co., Inc.,* 76 F.3d 530, 533 (4th Cir.1996). However, in doing so, the court held that "[t]he most important of the factors identified in Pioneer for determining whether "neglect" is "excusable" is the reason for the failure to file the notice of appeal within thirty days of entry of judgment." This raises a question as to whether Dazey would fare any better under the *Pioneer* test since that factor (i.e., the reason for the delay) weighs heavily against Dazey in the present case.